# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KEITH STANSELL *et al.*,

  *Plaintiffs*,

v.

REVOLUTIONARY ARMED FORCES OF COLOMBIA (FARC) *et al.*,

  *Defendants*.

Misc. Action No. 10-471 (TJK)

## MEMORANDUM OPINION

  Plaintiffs move for writs of attachment against blocked assets belonging to four purported agencies or instrumentalities of the Revolutionary Armed Forces of Colombia. *See* ECF Nos. 9, 16. Under the Anti-Terrorism Clarification Act of 2018, Congress made assets blocked under the Foreign Narcotics Kingpin Designation Act, such as those at issue here, subject to attachment and garnishment by eligible victims of terrorism. As a result, and for the reasons explained, the Court will grant Plaintiffs' motions.

## I. Background

  In June 2010, Plaintiffs obtained a default judgment against the Revolutionary Armed Forces of Columbia ("FARC") and other associated defendants under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*, based on repeated acts of international terrorism between 2003 and 2008. *See* Default J., *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, No. 09-2308 (RAL-MAP), ECF No. 233 (M.D. Fla. June 15, 2010). Plaintiffs' judgment is in the amount of $318,030,000, *id.*, of which $301,831,178.28 remained uncollected when Plaintiffs filed the instant motions, *see* ECF No. 9 ¶ 5; ECF No. 16 ¶ 5. Plaintiffs have previously sought to enforce that judgment against assets held by the FARC within the United States under Section 201(a) of

the Terrorism Risk Insurance Act of 2002 (TRIA), Pub. L. No. 107–297, 116 Stat. 2322.  *See Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 913 (11th Cir. 2013) (per curiam).  Section 201(a) provides that the "blocked assets" of a terrorist party or "any agency or instrumentality" of a terrorist party are "subject to execution or attachment in aid of execution" to satisfy a judgment against that terrorist party.

In 2011, Plaintiffs sought to collect against certain assets belonging to a Colombian money-exchange house that were frozen under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et seq. Stansell*, 704 F.3d at 913.  Plaintiffs argued that the assets qualified as "blocked assets" of an "agency or instrumentality" of the FARC, and thus that they could be garnished pursuant the TRIA.  *Id.*  At that time, the TRIA defined "blocked assets" to mean "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act . . . or under sections 202 and 203 of the International Emergency Economic Powers Act."  TRIA § 201(d)(2)(A).

The Eleventh Circuit rejected that effort, however, holding that Plaintiffs could not execute against assets frozen under the Kingpin Act because such assets were not expressly included under the TRIA's definition of "blocked assets."  *Stansell*, 704 F.3d at 915–16.  Then, in October 2018, Congress responded to that decision by passing the Anti-Terrorism Clarification Act of 2018 (ATCA), Pub. Law 115-253, 132 Stat. 3183 (codified at 18 U.S.C. §§ 2331, 2333–34), which amended the definition of a "blocked asset" under the TRIA to include "any asset of [a] terrorist party (including the blocked assets of any agency or instrumentality of that party) seized or frozen by the United States under Section 805(b) of the Foreign Narcotics Kingpin Designation Act."

Plaintiffs now move for writs of attachment under the amended TRIA against two sets of assets blocked under the Kingpin Act. *See* ECF Nos. 9, 16. First, Plaintiffs seek writs of attachment against blocked assets of Aero Continente, S.A., held by Wells Fargo Bank, N.A., and American Express National Bank ("Aero Continente Motion"). ECF No. 9. Plaintiffs purport that Aero Continente is an agency or instrumentality of the FARC because it operates as a front company for and is controlled by the Zevallos organization, a Peru-based drug-trafficking operation. Second, Plaintiffs seek writs of attachment against blocked assets of Banco Continental, S.A., held by Wells Fargo Bank, N.A., and of Inversiones Continental (Panama), S.A. de C.V. and Inverciones Continental, U.S.A., Corp., held by Morgan Stanley Smith Barney, LLC ("Continental Motion"). ECF No. 16. Plaintiffs allege that Banco Continental, Inversiones Continental (Panama) and Inverciones Continental, U.S.A., are all agencies or instrumentalities of the FARC because they are controlled by the Honduras-based Rosenthal organization, which launders money and provides other services in support of narcotics trafficking.

## II. Legal Standard

Plaintiffs seek post-judgment attachment of blocked assets of an agency or instrumentality of a terrorist party under Section 201(a) of the TRIA, which provides that:

> [I]n every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

The TRIA therefore requires the Court to determine (1) whether the plaintiff has obtained a judgment against a terrorist party based on an act of terrorism, (2) whether the relevant assets are "blocked" under the TRIA, and (3) whether the owner of the assets is a terrorist party subject to the judgment or an agency or instrumentality of that party. *See Stansell v. Revolutionary Armed*

3

*Forces of Colom.*, 771 F.3d 713, 723 (11th Cir. 2014) (citing *Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006)).

**III. Analysis**

**A. Subject Matter Jurisdiction**

Under the TRIA, "any court of competent jurisdiction" may enforce judgments rendered on behalf of victims of terrorism "by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties" or the agency or instrumentality of a terrorist party. *Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 436 (D.D.C. 2012) (quoting *Weininger*, 462 F. Supp. 2d at 483). This Court therefore has subject matter jurisdiction over this action because it involves a federal question on the execution of a judgment under the Anti-Terrorism Act.

**B. Judgment Against a Terrorist Party**

To execute a judgment on blocked assets of a terrorist party, or its agency or instrumentality, the TRIA first requires Plaintiffs to obtain a judgment against a terrorist party for a claim based on an act of terrorism. TRIA § 201(a). Plaintiffs have done so here.

In June 2010, Plaintiffs obtained a default judgment in the Middle District of Florida against the FARC in the amount of $318,030,000 based on acts of terrorism against them.[1] *See* Default J., *Stansell*, No. 09-2308 (RAL-MAP), ECF No. 233. The FARC is a designated foreign terrorist organization that operates mainly in the Republic of Columbia and has sought to destabilize the Colombian government through acts of violence, including murders, hostage takings, and bombings. *See Stansell v. Republic of Cuba*, 217 F. Supp. 3d 320, 328 (D.D.C.

---

[1] Venue was proper in the Middle District of Florida under the Anti-Terrorism Act, 18 U.S.C. § 2334(a), because three individual plaintiffs resided there at the time the action was filed. *See* Compl. ¶¶ 7, 9, 14, *Stansell*, No. 09-2308 (RAL-MAP), ECF No. 1.

4

2016); *see also* 80 Fed. Reg. 19,728 (April 13, 2015) (maintaining designation of the FARC as a foreign terrorist organization). And Plaintiffs have properly registered a certified copy of the judgment in this court. ECF No. 1. Thus, on both motions, Plaintiffs have satisfied the first requirement for post-judgment attachment under Section 201(a) of the TRIA.

### C. Blocked Assets

The TRIA permits the attachment of "blocked assets." TRIA § 201(a). Under the expanded definition of "blocked assets" under the ATCA, a U.S. national may seek post-judgment attachment on assets seized or frozen by the United States under section 805(b) of the Kingpin Act. *See* 18 U.S.C. § 2333(e). Because Plaintiffs seek to attach assets blocked under the Kingpin Act, they have satisfied this second requirement.

First, in the Aero Continente Motion, Plaintiffs, who are U.S. nationals, identify multiple blocked accounts owned by Aero Continente held by Wells Fargo Bank, N.A., and American Express National Bank in several locations across the United States. *See* ECF No. 9 ¶ 24. In November 2004, OFAC designated Aero Continente a specially designated narcotics trafficker ("SDNTK") under the Kingpin Act, ECF No. 9-4, and similarly designated several individuals associated with Aero Continente and the Zevallos organization in February 2009, ECF No. 9-5. As a result of that designation, Aero Continente's U.S.-based assets are blocked or frozen. *See* 21 U.S.C. § 1904(b). In 2013, Fernando Zevallos, the former head of Aero Continente and the Zevallos organization, filed a lawsuit seeking to delist the organization as a SDNTK, but he did not succeed. *See Zevallos v. Obama*, 10 F. Supp. 3d 111, 122–23 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). So when Plaintiffs filed the instant motion, Aero Continente remained listed as a SDNTK under the Kingpin Act. *See* ECF No. 9-7. Thus, given the amended

definition of "blocked assets" in the ATCA, Aero Continente's blocked assets are subject to attachment under the TRIA.

Second, in the Continental Motion, Plaintiffs identify blocked accounts held by Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., held at Wells Fargo Bank, N.A., and Morgan Stanley Smith Barney LLC. ECF No. 16 ¶ 32. In October 2015, OFAC designated each of these entities as SDNTKs because of their significant role in the money-laundering activities of the Rosenthal organization, which facilitated the laundering of narcotics proceeds for multiple Central American drug-trafficking organizations. ECF No. 16-2. Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., remained designated SDNTKs when Plaintiffs filed their motion. ECF No. 16 ¶ 34. Thus, the blocked assets of these entities are subject to attachment under the TRIA.

For these reasons, Plaintiffs have satisfied the second requirement for post-judgment attachment under Section 201(a) of the TRIA as to both motions.

**D.     Agency or Instrumentality of a Terrorist Party**

Finally, for purposes of post-judgment attachment, the TRIA requires that the blocked assets belong to the terrorist party subject to the judgment or to agencies or instrumentalities of that party. TRIA § 201(a). The TRIA does not, however, define "agency or instrumentality." Plaintiffs contend that the Court should adopt the standard relied on by courts in its prior litigation against the FARC, *see* ECF No. 9 ¶¶ 31–32; ECF No. 16 ¶¶ 21–22, which states:

> Any SDNT or SDNTK person, entity, drug cartel or organization, including all of its individual members, divisions and networks, that is or was ever involved in the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, distribution of FARC coca paste or cocaine, or that assisted the FARC's financial or money laundering network, is an agency or instrumentality of the FARC under the TRIA because it was either:

6

> (1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a specially designated narcotics trafficker [FARC]; and/or
>
> (2) owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker [FARC]; and/or
>
> (3) playing a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC].

*See, e.g.*, Order, *Stansell*, No. 09-2308 (RAL-MAP), ECF No. 322. The Eleventh Circuit affirmed the district court's application of this standard, noting that the standard relied on "the plain and ordinary meaning" of the terms "agency" and "instrumentality," *Stansell*, 771 F.3d at 732, and reflected the purpose of the TRIA to "deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism," *id.* (quoting *Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010)). Under this standard, a plaintiff must present evidence sufficient to establish a relationship between the terrorist party and the purported agency or instrumentality, although that relationship may be "indirect." *Id.* at 742. The Court adopts this standard for the reasons explained by the Eleventh Circuit.

First, as to Aero Continente, Plaintiffs argue that it operated as an agency or instrumentality of the FARC through its significant role in the narcotics trafficking activities of the Zevallos organization. ECF No. 9 ¶¶ 10–17. In support of their claim, Plaintiffs have submitted affidavits from two subject-matter experts specializing in international drug-trafficking and terrorism: Retired DEA Special Agent Terry Parham, ECF No. 7, and Retired Colombian Marine Corporate Colonel Luis Miguel Cote, ECF No. 8. Both Parham and Cote attest in detail how the Zevallos organization, using Aero Continente as a front company, participated in the FARC's cocaine-trafficking operation by providing transportation and money-laundering services, as well as other forms of material and technological assistance. *See* ECF

7

No. 7-1 ¶¶ 31–46; ECF No. 8-2 ¶¶ 32–35.  Plaintiffs have also filed an appendix of news articles, government reports, and litigation documents that they argue provide more evidence to support their claim that the Zevallos organization, and thereby Aero Continente, functioned as an agency or instrumentality of the FARC.  *See* ECF No. 5.  And in September 2011, in a prior case brought by Plaintiffs, a district court in the Middle District of Florida concluded that Aero Continente was an agency or instrumentality of the FARC, given its involvement in "the cultivation, manufacture, processing, purchase, sale, trafficking, security, storage, shipment or transportation, [or] distribution of FARC coca paste or cocaine."  Order, *Stansell*, No. 09-2308 (RAL-MAP), ECF No. 322 ¶ 15.  The court reaffirmed that determination in June 2019.  *See Stansell*, No. 09-2308 (AAS), 2019 WL 2537791, at *1 (M.D. Fla. June 20, 2019).

Upon consideration of these submissions, as well as all available evidence in the record, the Court finds that Plaintiffs have established that Aero Continente provided material support for, and played a significant role in, the FARC's international narcotics-trafficking operation.  For these reasons, Aero Continente qualifies as an agency or instrumentality of the FARC for purposes of post-judgment attachment under the TRIA.

Second, as to Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., Plaintiffs contend that these entities operate as agencies or instrumentalities of the FARC both because of the roles they play for the Rosenthal organization, and the Rosenthal organization's connections to the Los Cachiros organization and the Sinaloa Cartel.  Los Cachiros is a Honduras-based narcotics-trafficking organization, which OFAC designated as an SDNTK in September 2013.  *See* ECF No. 14-4.  And the Sinaloa Cartel is a Mexico-based narcotics-trafficking organization that another district court determined is an agency or instrumentality of the FARC.  *See* Order, *Stansell*, No. 09-2308 (RAL-MAP), ECF No. 322.

8

As the first step in linking these three entities and the Rosenthal organization to the FARC, Plaintiffs marshal evidence connecting the Rosenthal organization to Los Cachiros. In October 2015, OFAC designated three members of the Rosenthal family and seven businesses under their control, including Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., as SDNTKs based on their provision of "money laundering and other services that support the international narcotics trafficking activities of multiple Central American drug traffickers and their criminal organizations." ECF 14-7. In doing so, OFAC identified these entities as key financial institutions in the Rosenthal organization's money-laundering operation. *Id.* One of the individuals designated, Yani Benjamin Rosenthal Hidalgo, later pleaded guilty in the Southern District of New York to engaging in a money-laundering scheme on behalf of, among other parties, Los Cachiros. *See* ECF No. 14-13 at 29. And further, in January 2018, a lawyer employed by the Rosenthal organization pleaded guilty to assisting the laundering of proceeds of narcotics trafficking through Banco Continental and other entities, including proceeds generated by Los Cachiros. ECF No. 14-15 at 23–24. Based on this and other evidence, Plaintiffs contend that the three entities provided material support to Los Cachiros' narcotics-trafficking operation.

Second, Plaintiffs provide evidence that links Los Cachiros to the FARC. Plaintiffs have submitted an affidavit by Douglas Farah, President of IBI Consultants, LLC, and a subject-matter expert on terrorism in Latin America. ECF No. 15-1. According to Farah, Los Cachiros provided extensive material support to the FARC through the transportation and distribution of its narcotics and the laundering of its trafficking proceeds. *Id.* ¶¶ 49–56. In addition, Farah notes that Los Cachiros and the Rosenthal organization have provided support for the Sinaloa Cartel, which moves FARC cocaine from Colombia to Mexico. *Id.* ¶¶ 50, 57. Farah thus

9

concludes that Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., qualify as agencies or instrumentalities of the FARC based on the Rosenthal organization's extensive support for Los Cachiros and the Sinaloa Cartel. *Id.* ¶ 57.

Plaintiffs have also submitted an appendix of news articles, government reports, and documents from related cases that, they contend, show that the three entities at issue are agencies or instrumentalities of the FARC. *See, e.g.*, ECF No. 14-9 (article linking Banco Continental with Los Cachiros and the Sinaloa Cartel). They argue that this evidence, taken together, connects the money-laundering activities of the Rosenthal organization and the drug-trafficking operation of the FARC.

Upon consideration of this evidence, Farah's affidavit, and the entire record, the Court finds that Plaintiffs have sufficiently established that Banco Continental, Inversiones Continental (Panama), and Inverciones Continental, U.S.A., provided material support for, and played a significant role in, the FARC's international narcotics-trafficking operation. Although the connection between the Rosenthal organization and the FARC runs through the Los Cachiros and Sinaloa Cartel operations, evidence of an indirect relationship is adequate to establish an agency or instrumentality relationship. *See Stansell,* 771 F.3d at 742. The Court thus concludes that, for purposes of post-judgment attachment under TRIA § 201(a), these entities are agencies and instrumentalities of the FARC.

## IV.  Conclusion

For the above reasons, the Court holds that Plaintiffs have met the standard under Section 201(a) of the TRIA by establishing that (1) they have a judgment against a terrorist party, (2) the assets they seek to attach are "blocked assets" under the TRIA, and (3) the blocked assets belong to agencies or instrumentalities of that terrorist party. In a separate order, the Court will direct

the Clerk of Court to issue the two writs of attachment sought by Plaintiffs through the Aero Continente Motion, ECF No. 9-8, ECF No. 9-9, and the two writs of attachment sought by Plaintiffs through the Continental Motion, ECF No. 16-4, ECF No. 16-5.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: August 26, 2019